IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------
                                                    :
                                                    : CASE NO. 1:14 CV 01197
AMANDA THOMPSON,                                    :
                                                    :
                                       Plaintiff,   : MEMORANDUM OF OPINION AND
                                                    : ORDER
           -vs-                                     :
                                                    :
                                                    : (Resolving Doc. 13)
CITIZENS NATIONAL BANK, et al.,                     :
                                                    :
                                    Defendants.
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

    Between 1999 and 2003, the plaintiff Amanda Thompson maintained an investment account with defendant Citizens National Bank ("Citizens"). Defendant Camm Garrett was named as the account's manager. As of September 1, 2000, the account had a balance of over $1.39 million. By September 2004, the account was closed with a zero balance. The plaintiff maintains that in the intervening years, the defendants took control of her account, schemed to keep her misinformed or uninformed about its status, and allowed or caused her money to be transferred into accounts held by, or to pay the debts and obligations of, defendant Philip Bethune, Ms. Thompson's ex-husband. The plaintiff brings claims of breach of contract against

Citizens; breach of the covenant of good faith and fair dealing against Citizens and Garrett; breaches of fiduciary duty against Citizens and Garrett; conversion against Citizens, Garrett, and Bethune; and civil conspiracy against Garrett and Bethune.

Presently before the Court is a motion to dismiss for failure to state a claim upon which relief can be granted, filed by defendant Philip Bethune. Mr. Bethune maintains that the two claims against him are time-barred. The plaintiff Ms. Thompson has filed a response in opposition, and the defendant has replied. For the reasons that follow, Mr. Bethune's motion will be granted.

## I. Background

For the purpose of deciding the defendant's motion, the factual allegations that follow, being derived from the plaintiff's complaint, are accepted as true, while legal conclusions are not. See Ashcroft v. Iqbal, 556 U.S. 662, 678(2009). Plaintiff Amanda Thompson opened an Agency Investment Account ("Agency Account") with Citizens on December 29, 1999. (Complaint, ¶14). Defendant Citizens is named as the "Agent" of the Agency Account, and Ms. Thompson is named as the "Principal." (Complaint, ¶16). Defendant Garrett, as manager, executed the Agency Account Agreement on behalf of Defendant Citizens. (Complaint, ¶17). The Agreement allowed for amendment by "mutual consent of the parties hereto in writing." The Agreement further provided for termination by "either party upon thirty (30) days written notice to the other party." (Complaint, ¶ 18). The plaintiff alleges that at no time did she receive notice of amendment or termination of the Agency Account Agreement.(Complaint ¶19).

On May 24, 2001, Ms. Thompson executed the "ACB 2001 Trust," which provided that it was the "intention of [the plaintiff] that all assets be transferred to the

2

ACB trust. (Complaint, Exhibit 2). The plaintiff alleges that she understood and believed that all her assets, including the Agency Account, would be subject to the control and protection of the ACB Trust. (Complaint, ¶21). The ACB Trust document was executed by the plaintiff as Managing Trustee, David B. Hehn as "Nevada Trustee" and defendant Garrett as "Distribution Trustee." (Complaint, ¶22). Distributions to Ms. Thompson under the ACB Trust were subject to majority approval of the trustees. (Complaint, ¶23). As a party to the ACB Trust, Defendant Garrett allegedly had knowledge that the plaintiff's assets, including the Agency Account, were to be transferred into the ACB Trust. It is further alleged that he had knowledge that distributions from the ACB Trust would be subject to the scrutiny of additional trustees. (Complaint, ¶24).

On June 1, 2001, one week after Ms. Thompson established the ACB Trust, her Agency Account was allegedly converted into a separate trust account (hereinafter, "Calfee Trust"), by means of an Amendment to the Agency Agreement, which the plaintiff had allegedly executed in 1998 but never utilized. (Complaint, ¶25). Under the Amendment, Citizens would continue to serve as investment agent and the plaintiff would serve as sole Trustee. (Complaint, ¶26). The Amendment was executed by Mr. Garrett on behalf of Citizens on or about June 1, 2001. (Complaint, ¶27). The plaintiff claims her signature was forged on the Amendment that converted her Agency Account into the Calfee Trust Account. (Complaint, ¶28). The Calfee Trust provided that Ms. Thompson, as Trustee, had the sole right to distribute property or proceeds of the Calfee Trust. (Complaint, ¶29). The plaintiff maintains that at no time did she authorize a withdrawal, distribution, or disbursement from her Agency Account or the Calfee Trust

with Citizens. (Complaint, ¶30).

The plaintiff alleges that from December 1999 until March 11, 2013, she never saw monthly statements or requests for authorization of withdrawal, distribution, or disbursement of funds from the Agency Account. The plaintiff says she never received quarterly or annual reviews under either the Agency Account or the Calfee Trust. (Complaint, ¶31). According to the complaint, despite multiple requests for complete documentation of the accounts from Citizens, Ms. Thompson does not possess a complete transaction history. Thus, she contends, she can only approximate disbursements based on the incomplete records that she does possess. (Complaint, ¶32). According to the plaintiff, from January 30, 2001 through July 18, 2003, approximately $1.127 million in funds were distributed and/or disbursed from Plaintiff's Agency Account and/or Trust with Citizens. (Complaint, ¶33).

The plaintiff alleges that many or all of the distributions/disbursements were paid directly into Mr. Bethune's personal bank accounts and used to pay his debts. (Complaint, ¶35). The plaintiff alleges that Defendant Garrett effected some of the distributions/disbursements described by internal memos to Citizens staff. In these memos, Mr. Garrett indicated that Ms. Thompson verbally authorized him to make the distributions/disbursements. (Complaint, ¶36). The plaintiff, however, maintains that she never verbally authorized Mr. Garrett to make any distributions/disbursements from her account with Citizens. (Complaint, ¶37). According to the plaintiff, Citizens's records contain letters purporting to bear her signature and authorizing some of the distributions/disbursements. (Complaint, ¶38). Plaintiff maintains that she did not send or sign any of these letters. (Complaint, ¶39; Exhibit 6).

4

On or about February 23, 2012, Plaintiff requested that Mr. Garrett and Citizens produce account records from June to September 2001. (Complaint, ¶40). On or about February 24, 2012, Mr. Garrett sent the requested documents. (Complaint, ¶41). In October 2012, Ms. Thompson requested all records related to her account, which Citizens allegedly resisted. (Complaint, ¶42). According to the plaintiff, on or about March 11, 2013, after six months of communications between Citizens and Ms. Thompson's counsel, Citizens produced what it considered the complete records associated with Ms. Thompson's account. (Complaint, ¶43).

The plaintiff contends that the March 11, 2013 record production was incomplete, as it was missing a number of monthly account statements. (Complaint, ¶44). Also missing were authorizations for many of the distributions/disbursements. (Complaint, ¶45). Based on the produced records, the plaintiff learned that her account had been closed in September 2004 with a zero balance. (Complaint, ¶46).

Ms. Thompson maintains that among the records produced there was a document converting the plaintiff's Agency Account into the Calfee Trust and three letters purporting to be from Ms. Thompson, authorizing the distribution/disbursement of her accounts funds. According to the plaintiff, all three letters were signed by someone other than herself. (Complaint, ¶47). Ms. Thompson claims that after reviewing the records, she discovered that her Agency Account had been converted into the Calfee Trust, that the defendants had made unauthorized distributions/disbursements, and that her signature had been forged on documents, among other things.(Complaint, ¶48).

June 3, 2014, the plaintiff filed this lawsuit against Citizens, Mr. Garrett, and Mr. Bethune. She maintains that Citizens is liable for breach contract (count 1) for

5

converting the plaintiff's Agency Account into the Calfee Trust; forging the Plaintiff's signature; failing to authenticate the plaintiff's signature; falsely representing that the plaintiff consented to the withdrawals, distributions, and disbursements from her account; transferring the plaintiff's funds to Mr. Bethune's accounts without her permission; and failing to keep the plaintiff informed about account activity, *inter alia*. The plaintiff maintains that based on the same conduct Citizens and Mr. Garrett are liable for breaches of the covenant of good faith and fair dealing (count 2) and for breaches of fiduciary duty (count 3). The plaintiff brings a conversion claim (count 4) against Citizens, Mr. Garrett, and Mr. Bethune. The plaintiff further alleges that Mr. Garrett and Mr. Bethune engaged in a civil conspiracy by converting the plaintiff's funds and affirmatively concealing their actions (count 5). Finally, the plaintiff brings a negligence claim against defendant Citizens (count 6).

Mr. Bethune argues that the claims against him should be dismissed as time-barred.

## II. Law and Argument

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Twombley/Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Mr. Bethune moves to dismiss the two claims against him–conversion and civil conspiracy--on the ground that the statute of limitation for each claim expired before this lawsuit was filed. It is undisputed that in Ohio, the statute of limitation for conversion is four years. R.C. § 2305.09. The parties further agree that because a claim for civil conspiracy is not an independent cause of action, see Palmer v. Westmeyer, 549 N.E.2d 1202 (Ohio Ct. App. 1988), the applicable limitations period is drawn from the cause of action that underlies it. See Cully v. St. Augustine Manor, Case No. 67601, 1995 WL 237129, at *4 (Ohio Ct. App. Apr. 20, 1995). In this instance, the cause of action underlying the civil conspiracy claim is conversion. Therefore, the statute of limitations for the plaintiff's civil conspiracy claim is also four years.

The defendant argues that the plaintiff's claims are time-barred because the complaint alleges that all acts of conversion took place between January 30, 2001 and July 18, 2003. Thus, the defendant argues, the statute of limitations expired, at the latest, on July 18, 2007. The defendant accordingly argues that the plaintiff's claims, filed June 3, 2014, are too late.

The plaintiff, in response, points out that under the discovery rule, the four-year limitations period does not begin running on her claims until the plaintiff discovered, or

should have discovered, her injury. See Investors REIT One v. Jacobs, 46 Ohio St. 3d 176, 546 N.E.2d 206, 206-07 (Ohio 1989). In this instance, Ms. Thompson's complaint alleges that "[d]espite the exercise of due and reasonable diligence, Plaintiff did not discover Defendants' [wrongdoing] until in or about March 11, 2013, when Defendant Citizens provided Plaintiff documentation revealing the wrongful distributions/disbursements, forgeries, and other wrongdoings described in the complaint." (Complaint, ¶¶ 73, 80). In light of this allegation, the plaintiff maintains, the statute of limitations did not begin to run until March 11, 2013, making her claims timely.

On a motion to dismiss, this court draws all reasonable inference in favor of the plaintiff and accepts all factual allegations as true. However, the court does not accept as true legal conclusions that are stated in the complaint. In this instance, to the extent the facts are undisputed, the plaintiff's allegation that she used "due and reasonable diligence" is a legal conclusion, not an allegation of fact. Therefore, the Court need not accept at face value the plaintiff's assertion of reasonableness.

When evaluating the timeliness of a claim on a motion to dismiss, the Court considers whether "the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief." New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir.2003) (citations and quotations omitted). Although the dismissal of claims as untimely pursuant to Rule 12(b)(6) is disfavored, such a dismissal may be appropriate where the basis of the limitations defense is apparent from the face of the complaint. Owner Operator Independent Drivers Ass'n, Inc. v. Comerica Bank, 540 F.Supp.2d 925, 929 (S.D.Ohio 2008)(internal citations omitted). Where the defense is apparent from the complaint, the plaintiff

8

assumes the burden of "plead[ing] circumstances which would indicate why the [cause of action] was not discovered earlier and which would indicate why the statute should be tolled." Id. (quoting Auslender v. Energy Mgmt. Corp., 832 F.2d 354, 356 (6th Cir.1987)).

In this instance, the alleged acts of wrongdoing occurred between the years 2001 and 2003. Thus, because this lawsuit was filed more than four years after the last alleged act of conversion, Mr. Bethune raises a colorable limitations defense in light of the allegations contained in the complaint. It is accordingly Ms.Thompson's burden to demonstrate that she was unable to discover the cause of action until March 2013 despite the exercise of reasonable care. While she claims that her cause of action did not come to light until 2013, despite her exercise of reasonable care, she offers insufficient factual matter to support this claim. According to the Amended Complaint,

> From December 1999 until March 11, 2013, Plaintiff never saw monthly statements or request(s) for authorization of withdrawal, distribution, and/or disbursement of funds from the account. Plaintiff never received quarterly or annual review(s) under either the Agency Account or subsequent Trust.

(Complaint, ¶31). Ms. Thompson claims that the defendants fraudulently concealed the numerous transactions that occurred during the relevant time period, and she claims that the defendants did not keep her apprised of the status of her account by failing to send her account statements. She further maintains that the defendants resisted her efforts to obtain account information. On the other hand, the amended complaint contains no allegation that the plaintiff made any inquiry into the status of the account between the years 1999 and 2012. According to the plaintiff, her first inquiry did not occur until February 23, 2012 when she inquired about a promissory note that was

9

purchased in 2001.

In the Court's view, despite the allegation that the defendants never sent account statements to her, Ms. Thompson fails to describe a situation where her late discovery of the defendants' alleged wrongdoing was reasonable. The amended complaint essentially tells the story of an investment account containing over $1 million, which sat completely unmonitored by Ms. Thompson for twelve years. While the plaintiff contends that the defendants resisted her efforts to obtain her account records, the alleged resistance did not occur until after February 2012, more than eight years after the last alleged act of conversion. There is no allegation that the plaintiff attempted to obtain her records prior to that time, nor does the plaintiff claim that the defendants or some factor not within her control obstructed any attempt to obtain her account records. Nor does the plaintiff provide any other factual allegation that would reasonably explain the eight-year delay between the last instance of conversion and Ms.Thompson's discovery of it.

Ms. Thompson cannot simply rely on the defendants' alleged failure to send her account statements as a basis for her inability to discover the cause of action. If anything, as Mr. Bethune points out, the fact that Ms. Thompson never received any correspondence in relation to her Agency Account reasonably should have put her on notice that there might be an issue with the account. With the exercise of reasonable care, the opportunity to determine the status of the account should have arisen long before 2012.

In addition, the amended complaint contains allegations demonstrating that Ms. Thompson should have discovered at least two of the alleged instances of conversion

as early as 2001. Ms. Thompson opened the Agency Account on December 29, 1999, and, as of September 1, 2000, there was $1.39 million in the account. (Complaint, ¶1, 15). On May 24, 2001, Ms. Thompson transferred the Agency Account to the ACB trust. (Complaint, ¶20). Ms. Thompson made this transfer with the intention that "all assets be transferred to the ACB Trust." (Complaint, ¶20). As stated in the amended complaint, at the time of the transfer, Mr. Bethune had already allegedly converted $56,000 in two transactions, which are dated January 30, 2001 ($20,000) and March 16, 2001 ($36,000). (Complaint, ¶34a,b). In the Court's view, Ms. Thompson should have discovered, by any degree of reasonable diligence, that the Agency Account balance had dropped by $56,000 as of May 24, 2001 – the date she moved her funds into the ACB Account. This discrepancy would have prompted a reasonable person under the circumstances inquire further in order to determine why the account was missing a significant amount of money. While the plaintiff suggests, in a conclusory way, that she used reasonable and diligent efforts to keep herself apprised of the account's status, the amended complaint contains no specific allegation that she actually made any inquiry about her account until 2012.

In addition, the defendants reveal other facts, by which Ms. Thompson should have discovered the defendants' alleged improprieties through the exercise of reasonable diligence. In her amended complaint, the plaintiff indicates that she and Mr. Bethune divorced in 2004, about one year after the last act of alleged wrongdoing, and the defendant supplies documents from their divorce proceedings. These documents include the domestic relations court's Entry of Judgment and the Separation Agreement, which was incorporated by reference in the court's judgment. Because

11

these documents are public records, this Court may consider them without converting the defendants' motion to dismiss to one for summary judgment. See Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001) (on a motion to dismiss, the court may consider "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.")

The Separation Agreement provides a listing of the financial assets which were held by Ms. Thompson and Mr. Bethune, including bank, savings and loan, credit union and mutual fund accounts. At subsection 17, the Separation Agreement states:

> By executing this Agreement, each party acknowledges that they have made a full and correct representation to the other party of his or her current financial status and all of his or her assets and liabilities and each has made representation of the existence, location and value of all such assets and liabilities.

Thus, by the terms of the separation agreement, Ms. Thompson was obligated to identify all of her assets and represent those assets to her now ex-husband, Mr. Bethune. It is the plaintiff's position that the Agency Account was one of her assets at the time the Separation Agreement was executed, and she does not dispute that the Agency Account was subject to disclosure under the agreement. Through the exercise of reasonable care, and by her obligation to abide by the terms of the separation agreement, Ms. Thompson should have at least been aware of the value of her account. Had she done so in 2004, she would have discovered all of the allegedly improper transactions on her account.

In sum, Ms. Thompson fails to allege facts that reasonably explain the eight-year delay between the defendants' alleged conversion and her discovery of it. Although the plaintiff states as a legal conclusion that she used reasonable and diligent efforts, she

12

does not offer any specific factual allegations that would support this claim either directly or by reasonable inference. "It is not ... proper to assume that [the plaintiff] can prove facts that [she] has not alleged[.]" Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983). Therefore, because the plaintiff has failed to allege plausible grounds for relief with respect to her claims against Mr. Bethune, those claims will be dismissed.

### III. Conclusion

For the reasons stated above, the Mr. Bethune's motion to dismiss is granted.

IT IS SO ORDERED.

                                         /s/ Lesley Wells  
                                         UNITED STATES DISTRICT JUDGE

Date: August 21, 2015