IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
                                                                 : CASE NO. 1:14 CV 01197
AMANDA THOMPSON, :
                                                                 :
                                                Plaintiff, : <u>MEMORANDUM OF OPINION AND</u>
                                                                  : <u>ORDER</u>
                              -vs- :
                                                                  : (Resolving Doc. 14).
                                                                   :
CITIZENS NATIONAL BANK, et al., :
                                                                   :
                                           Defendants. :
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

      Before the Court is a motion to dismiss the amended complaint for lack of personal jurisdiction filed pursuant to Federal Rule of Civil Procedure 12(b)(2) by defendants Skidmore Camm Garrett ("Mr. Garrett") and Citizens National Bank ("Citizens") (collectively, "defendants"). The defendants alternatively move to dismiss on the ground that venue is improper. As a second alternative, they move for a transfer of venue to the Eastern District of Tennessee. The plaintiff Amanda Thompson has filed a memorandum in opposition, and the defendants have replied. For the reasons that follow, the Court will deny the defendants' motions.

**I. Background**

In December 1999, the plaintiff Amanda Thompson, an Ohio citizen, opened an investment account with defendant Citizens, a Tennessee bank with its principal place of business in Athens, Tennessee. Defendant Mr. Garrett, an employee of Citizens and a citizen of Tennessee, was the manager of Ms. Thompson's account. Defendant Philip Bethune is the plaintiff's ex-husband. The couple divorced in 2004.

As of September 1, 2000, Ms. Thompson's account had a balance of over $1.39 million. By September 2004, the account was closed with a zero balance. The plaintiff maintains that in the intervening years, the defendants took control of her account, schemed to keep her misinformed or uninformed about its status, and allowed or caused her money to be transferred into Ohio-based bank accounts held by defendant Mr. Bethune.

The plaintiff filed this lawsuit, bringing claims of breach of contract against Citizens; breach of the covenant of good faith and fair dealing against Citizens and Mr. Garrett; breaches of fiduciary duty against Citizens and Mr. Garrett; conversion against Citizens, Mr. Garrett, and Mr. Bethune; and civil conspiracy against Mr. Garrett and Mr. Bethune.

The defendants Citizens and Mr. Garrett now move for dismissal on the ground that they are not subject to personal jurisdiction in the State of Ohio. In support of their claim that minimum contacts with the State of Ohio are lacking, the defendants supply the affidavits of Mr. Garrett and Michael L. Bevins, Executive Vice-President for Citizens. In his affidavit, Mr. Garrett asserts that his contacts with Ohio resulted solely from his relationship with co-defendant Mr. Bethune, his college classmate and close

2

friend, and ex-husband of the plaintiff. (Doc. 14-4, ¶¶5-20). Mr. Garrett claims that he opened the investment account for Ms. Thompson, but that he did so at the behest of Mr. Bethune. (Doc. 14-4, ¶¶9-10). Mr. Garrett indicates that all of the funds in Ms. Thompson's account were located in Tennessee, and that the investment account documents are to be governed by the law of Tennessee. (Doc. 14-4, ¶¶10-11). Mr. Garrett says that he assisted with the management of the investment account from Tennessee and that all of the documents related to the account are located in Tennessee. (Doc. 14-4, ¶¶12-13).

Mr. Garrett further maintains that he communicated with Ms. Thompson and Mr. Bethune primarily through telephone, U.S. Mail, fax, and email. (Doc. 14-4, ¶14). He indicates that he made multiple trips to Ohio to visit Mr. Bethune and Ms. Thompson, but that these trips were not business related; instead, he claims, they related to events such as baptisms, weddings, and other family matters. (Doc. 14-4, ¶17). As described in Mr. Bevin's affidavit, other than these contacts the defendants have no other connection to Ohio.[1]

---

[1] Citizens maintains that it has never marketed its services in Ohio; solicited business in Ohio; maintained any offices, agents, or employees in Ohio; owned or rented real estate in Ohio; sent agents to Ohio to solicit business; held itself out as doing business in Ohio; maintained accounts in Ohio; paid taxes in Ohio; maintained a business license in Ohio; had an affiliate or subsidiary in Ohio; had an agent for service of process in Ohio; maintained a sales force in Ohio. (Affidavit of Michael L. Bevins, Doc. 14-3, ¶¶4-18). Citizens claims that it held assets for Ms. Thompson in Tennessee and that it communicated with her through U.S. Mail, telephone, and facsimile. (Affidavit of Michael L. Bevins, Doc. 14-3, ¶¶19, 21). Citizens contends that its only contact with the State of Ohio arose solely because Ms. Thompson chose to live there, and it maintains that had Ms. Thompson lived in a different state, Citizens would not have any contact with the state of Ohio. (Affidavit of Michael L. Bevins, Doc. 14-3, ¶20).

3

In response to the defendants' submissions, the plaintiff has filed her own affidavit to support her claim that the defendants engaged in significant deliberate contact with the State of Ohio. In her affidavit, Ms. Thompson asserts that at all times relevant to this lawsuit she has resided in Ohio. (Doc. 17-1, ¶2). According to Ms. Thompson, over a period of at least six months in 1999, Mr. Garrett contacted her in Ohio and urged her to open an investment account with him and Citizens, which she allegedly agreed to do. (Doc. 17-1, ¶3). Ms. Thompson states that during that time, Mr. Garrett repeatedly sent marketing materials and information about his services to her home in Ohio. (Doc. 17-1, ¶4). Ms. Thompson says that Mr. Garrett visited her and her then-husband Philip Bethune in Ohio multiple times both before and after she signed the Agency Account Agreement. (Doc. 17-1, ¶5). During these visits, the plaintiff claims, Mr. Garrett discussed her investment account, Citizens' investment products, the services he could offer, and the strategies he would use with her account. (Doc. 17-1, ¶5).

Ms. Thompson asserts that she had never heard of Citizens, or its investment services, until Mr. Garrett contacted her and convinced her to open an account. (Doc. 17-1, ¶7). She maintains that had Mr. Garrett not convinced her to open the account, she would never have invested her money with them. (Doc. 17-1, ¶7). Ms. Thompson says that any document she signed for Citizens or Mr. Garrett was signed in Ohio and faxed to Citizens. (Doc. 17-1, ¶8). She says that all correspondence related to her account was sent to her home in Cleveland, or it was communicated by fax or telephone. (Doc. 17-1, ¶9).

4

**II. Law and Argument**

The plaintiff bears the burden of establishing that jurisdiction exists. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141 (1936). When faced with a motion to dismiss for lack of personal jurisdiction, a district court may, in its discretion, consider the motion on the basis of the written submissions alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). If the Court rules on the motion without conducting an evidentiary hearing, it must consider the pleadings and the affidavits in a light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). In these circumstances, a plaintiff need only make a prima facie showing of jurisdiction, and the Court need not consider contrary factual contentions of the defendant. Dean v. Motel 6 Operating L,P., 134 F.3d 1269, 1272-73 (6th Cir. 1998). This relatively light standard is justified because "[a]ny other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by the plaintiff." Serras, 875 F.2d at 1214. In this instance, the parties have neither requested a hearing nor conducted discovery in aid of the question of personal jurisidiction. The Court, accordingly, will decide the defendants' motion on the pleadings and affidavits.

When faced with the question of personal jurisdiction in a diversity case, a district court applies the law of the state in which it sits. Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980). The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements. See Nationwide

5

Mutual Ins. Co. v. Tryg International Ins. Co., 91 F.3d 790, 793 (6th Cir.1993) (citing Reynolds v. International Amateur Athletic Fed'n, 23 F.3d 1110, 1115 (6th Cir.1994)). Although the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause, the central inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." See Cole v. Mileti, 133 F.3d 433, 436 (6th Cir.1998).

*The Ohio Long Arm Statute*

Ms. Thompson must first make a prima facie showing that the defendants are subject to Ohio's long-arm statute.

The Ohio Long Arm Statute states, in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

* * *

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state. . . .

R.C. § 2307.382.

Ohio courts have construed the "transacting any business" clause broadly. See Ricker v. Fraza/Forklifts of Detroit, 160 Ohio App.3d 634, 828 N.E.2d 205, 209 (2005). "Transacting any business" encompasses "carrying on" business and "having dealings" within Ohio. Kentucky Oaks Mall Company v. Mitchell's Formal Wear, Inc., 559 N.E. 2d

6

477, 480 (Ohio 1990), cert. denied, 499 U.S. 975 (1991). In this instance, based on the plaintiff's allegations, the Court concludes that the defendants transacted business in Ohio. As stated in Ms. Thompson's affidavit, Mr. Garrett visited Ohio for the purpose of soliciting Ms. Thompson's business, and the defendants communicated with the plaintiff in Ohio via U.S. Mail, telephone, and facsimile. These communications allegedly included her counterpart signing of the original Agency Agreement in Ohio. Further, according to the amended complaint, the defendants ultimately did contract to supply financial services to the plaintiff in Ohio, as they were to provide her with an investment account and account management. The situs of this account was designated as Ohio. In addition, it is alleged that the defendants wrongfully disbursed funds from Ms. Thompson's account into Mr. Bethune's Ohio-based accounts. On the basis of these allegations, the defendants are subject to personal jurisdiction under the Ohio Long Arm Statute.

*Due Process Analysis*

Having determined that personal jurisdiction over the defendants exists under the "transacting-any-business" provision of Ohio's long-arm statute, the Court next considers whether exercising either general or specific personal jurisdiction over the defendants comports with the Due Process Clause of the U.S. Constitution. Ms. Thompson does not argue that the Court has general jurisdiction over the defendants. Accordingly, the Court considers whether specific jurisdiction exists.

Whether the exercise of personal jurisdiction over a non-resident defendant comports with due process is determined by a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir.1968). The Court will address each component of the test in turn.

*Purposeful availment*

The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that she "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (quoting World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297(1980)). The Supreme Court explains further:

> where the defendant deliberately has engaged in significant activities within a State . . . or has created continuing obligations between himself and residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Id. at 475-76. Personal jurisdiction "may not be avoided merely because the defendant did not physically enter the forum State." Id. at 476. Rather "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State," an absence of physical contacts cannot defeat personal jurisdiction. Id.

In CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1260 (6th Cir. 1996), non-resident defendant Patterson sold his software to third parties using Ohio-based plaintiff

8

CompuServe's computer network. The files were stored on CompuServe's Ohio-based network, which the defendant used to advertise his software to other CompuServe users. Patterson sold less than $650 worth of software to twelve Ohio-based users. A panel of the Sixth Circuit held that despite the defendant's lack of physical contacts to the State of Ohio, he had purposefully availed himself of the privilege of doing business in the forum because he reached out to an Ohio firm with which he created an ongoing relationship, injected his software product into the stream of commerce by marketing and selling his product through that firm, and he derived a benefit from his interstate activity.

In contrast, in Calphalon Corp. v. Rowlette, 228 F.3d 718, 723 (6th Cir. 2000), an Ohio plaintiff was seeking to expand its cookware business in a number of states that did not include Ohio. A non-resident defendant agreed to serve as the plaintiff's representative in those states. A panel of the Sixth circuit concluded that the fact that the defendant entered a contract with an Ohio plaintiff was, by itself, insufficient to support purposeful availment. The Court reasoned that the defendant could not reasonably be expected to be haled in to Court there, because "performance of the agreement was not focused on exploiting any market for cookware in the state of Ohio," and because the few contacts that the defendant did have with the forum occurred solely because the plaintiff chose to reside in the forum.

In the present case, the plaintiff alleges sufficient facts to show that the defendants deliberately reached across state lines and engaged in significant activities in Ohio from which they derived a benefit. As stated in Ms. Thompson's affidavit, Mr. Garrett contacted Ms. Thompson in Ohio, he urged her to open an investment account,

9

he repeatedly sent her marketing materials and information about his services, and he visited Ohio on multiple occasions to discuss Ms. Thompson's account. After she agreed to invest her money with the defendants, they opened the Agency Account for her. The cover sheet for that account indicates that Ohio is the account situs. On May 24, 2001, Mr. Garrett allegedly facilitated the transfer of that account to the ACB trust. The plaintiff contends that one week later the defendants converted her Agency Account into an Ohio trust instrument, the Calfee Trust. The plaintiff maintains that, with the Calfee trust established, the defendants wrongfully disbursed her funds, over a three year period, through wire transfer, into defendant Bethune's Ohio-based bank accounts. In addition, the plaintiff maintains that the defendants concealed evidence of their wrongdoing by arranging for the interception of her account statements when they arrived at her Ohio residence.

The Court disagrees with the defendants' contention that these contacts are like those presented in Calphalon, *supra*, where the non-resident defendant's contacts with Ohio occurred solely because the plaintiff chose to be headquartered there. In that case, the defendant visited Ohio, corresponded with the plaintiff in Ohio, and entered a contract with an Ohio resident, but, critically, the defendant's performance of that contract did not involve exploiting Ohio's market for the plaintiff's product. Here, in contrast, the defendants actions purposefully created continuing and meaningful consequences in Ohio. With the allegations viewed in favor of the plaintiff, the Court observes that the defendants solicited the business of an Ohio citizen, opened an investment account on her behalf, converted that account into an Ohio based trust, wrongfully distributed her funds to another Ohio citizen through wire transfers to his

10

Ohio based accounts, and arranged to conceal evidence of their wrongdoing by intercepting account statements at the plaintiff's Ohio residence. These are not contacts of the "random," "fortuitous," or "attenuated" variety for which a finding of purposeful availment does not lie. In the Court's view, Ms. Thompson has established a prima facie case of purposeful availment.

*The Arising From Requirement*

Next the Court must decide whether under the "arising from" component of the due process analysis, Ms. Thompson's causes of action are sufficiently related to the defendants' activity in Ohio. The "arising from requirement is satisfied when the operative facts of the controversy arose from the defendant's contacts with the state." Calphalon, 228 F.3d at 723. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." Id. In addressing the relationship between the defendants' activity in the forum and the plaintiff's causes of action, the Sixth Circuit has rejected the idea that mere but-for causation is sufficient. See Beydoun v. Wataniya Restaurants Holding, Q.S.C., 768 F.3d 499, 507 (6th Cir. 2014). Instead, "the plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state." Id.

In this instance, Ms. Thompson asserts claims of breach of contract, conversion, breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligence, and civil conspiracy. The defendants' Ohio contacts include Mr. Garrett's solicitation of Ms. Thompson in Ohio, his mailing of marketing materials and correspondence to Ohio, his physical visits to Ohio, the conversion of the plaintiff's agency account into the Ohio

11

based Calfee trust, the wrongful distribution of funds through wire transfers to Mr. Bethune's Ohio based accounts, and the concealment of wrongdoing through the interception of account statements at the plaintiff's Ohio residence.

As the defendants point out, the connection between a number of these contacts and Ms. Thompson's causes of action is a bit tenuous. For instance, it cannot be said that the contacts that were made prior to the opening of the agency account--Mr. Garrett's mailing of marketing materials, telephone calls, or his physical visits to Ohio--proximately gave rise to Ms. Thompson's claim of conversion or any of her other claims. Certainly, as the plaintiff argues, there is a but-for relationship between these contacts and the instant lawsuit: if Mr. Garrett had not solicited her, she would not have invested her money, and if she had not invested her money, then the defendants could not have converted her funds or breached the contract, etc. However, as noted above, but-for causation is not sufficient to satisfy the "arising under" component of the analysis. Thus, these particular contacts, viewed in isolation, did not give rise to the plaintiff's causes of action.

On the other hand, the plaintiff also alleges that the defendants converted her agency account into an Ohio trust instrument, wrongfully transferred funds into Mr. Bethune's Ohio bank accounts, and arranged for the interception of account statements at her Ohio home. Of these three alleged Ohio contacts, the defendants offer a response to only one, arguing that it is irrelevant that the Calfee trust is governed by Ohio law, because the plaintiff alleges a breach of the agency agreement, not the Calfee trust. They contend that they have no tie to the Calfee trust because it was established over a year before Ms. Thompson's relationship with the defendants began.

12

The defendants argue that the choice of law provision contained in the Calfee document is in no way controlling over the causes of action at issue here.

In the Court's view, the defendants' actions surrounding the Calfee trust are relevant, since the Calfee Trust was the means by which they allegedly converted the agency account. While the defendants claim they have no tie to the Calfee trust, on a motion to dismiss the Court must accept the plaintiff's claims otherwise. Here, the plaintiff alleges that Mr. Garrett executed an amendment to the Agency Agreement which allegedly bore the plaintiff's forged signature and facilitated the conversion into the Calfee trust. Although the defendants may ultimately be correct that Tennessee law, not Ohio law, will apply here, it is significant that the Calfee Trust, which, for the purpose of the instant motion, the defendants *are* tied to, calls for application of Ohio law. See Burger King Corp., 471 U.S. at 482 (choice of law provision is relevant to the question of personal jurisdiction).

Defendants offer no response to the plaintiff's argument that her claims arise from the wrongful deposit of funds into Mr. Bethune's Ohio based bank accounts. Nor do they take issue with the plaintiff's allegation that the defendants arranged for the interception of her mail at her home in Ohio. In the absence of a credible argument to the contrary, the Court concludes that the plaintiff's claims are sufficiently related to the just-described contacts such that the "arising from" requirement is satisfied. As described in the plaintiff's complaint, both of these allegations form part of the factual basis for her claims of breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and conversion.

As for the plaintiff's negligence claim against Citizens, the defendants contend that all of the facts relating to that claim occurred in Tennessee and not in Ohio. The Court disagrees. In the amended complaint, the plaintiff alleges acts of negligence on the part of Citizens which clearly had an impact in Ohio, and the Court is persuaded that the plaintiff's claim of negligence arises from Citizens' Ohio contacts.

*Whether the exercise of jurisdiction is reasonable*

With the first two elements of the due process test satisfied, there is an inference that the reasonableness prong is satisfied as well. CompuServe, Inc., 89 F.3d at 1268 (citing Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1170 (6th Cir.1988)).

The third requirement of the due process test mandates that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." See Youn v. Track, Inc., 324 F.3d 409, 419 (6th Cir.2003) (citation omitted). Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy. CompuServe, 89 F.3d at 1268.

In this instance, it is reasonable to subject the defendants to personal jurisdiction in Ohio. The Court recognizes that the defendants may be burdened in defending a lawsuit in Ohio, since they and many of the witnesses and documents relevant to this matter are located in Tennessee. However, as described above, the defendants have created a substantial connection with Ohio through their actions. Ms. Thompson, an

14

Ohio resident, has a strong interest in obtaining relief here, and the State of Ohio has an interest in protecting the legal options of one of its citizens. Youn, 324 F.3d at 419. Although the state of Tennessee has some interest in this matter, the Court concludes that factors weigh in favor of a finding of reasonableness.

*The Defendants' Venue Arguments*

The defendants argue that the Northern District of Ohio is an improper venue and that this matter should accordingly be dismissed or transferred pursuant to 28 U.S.C. § 1406. Venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

\   (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

28 U.S.C. § 1391. When a matter is filed in the wrong division or district, this Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Venue is not improper here. As described above, a substantial part of the events underlying this dispute occurred in this district, and Ohio was designated as the situs of Ms. Thompson's agency account. The court accordingly declines the defendants' request under § 1406.

Next, the defendants argue that this matter should be transferred to the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404. Title 28, United States Code, Section 1404(a) provides:

15

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought.

The decision whether to transfer venue is in the sound discretion of the trial court. Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988).The moving party has the burden of proving why a change of venue should be granted, and the plaintiff's choice of forum is to be given considerable weight. Mid-W. Materials, Inc. v. Tougher Indus., Inc., 484 F. Supp. 2d 726, 734 (N.D. Ohio 2007).

The factors to be considered regarding whether to change venue include the nature of the suit, the place of the events involved, the relative ease of access to sources of proof, the nature and materiality of testimony to be elicited from witnesses who must be transported, the respective courts' familiarity with applicable law and the condition of the courts' dockets and the residence of the parties. Id. When weighing the factors, the balance should be strongly in favor of a transfer before such a transfer is granted. Id.

In this case, the defendants argue that it would be more convenient to litigate this matter in Tennessee, because the only party who lives in Ohio is the plaintiff Ms. Thompson. The defendants indicate that all of its witnesses live and work in East Tennessee and that all the relevant documents are located in Tennessee. The defendants also point out that defendant Bethune lives in South Carolina, which is closer to Tennessee than it is to Ohio. The interests of justice weigh in favor of transfer, the defendants argue, because the Agency Agreement is to be interpreted under the laws of Tennessee. As such, they maintain, it would be more appropriate to allow Tennessee courts to resolve this dispute.

16

While inconvenience to the defendants and their witnesses deserves some weight, the Court finds that overall the balance of factors do not weigh strongly in favor of transfer. The documents in this matter are likely stored electronically and are thus easy to transmit. As for Mr. Bethune, in a contemporaneous order the Court has dismissed the claims against him. Whether this matter is to be decided under Tennessee law appears to still be a matter of debate, as the plaintiff asserts colorable arguments that Ohio law applies. The defendant has failed to persuade the Court that transfer is appropriate in this instance.

### III. Conclusion

For the reasons stated above, the defendant's motion to dismiss for lack of personal jurisdiction is denied. The defendants' alternative motions to dismiss for improper venue and for transfer of venue are denied.

IT IS SO ORDERED.

          /s/ Lesley Wells  
UNITED STATES DISTRICT JUDGE

Date: August 21, 2015

17