UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

|                                      |   |                                              |
|--------------------------------------|---|----------------------------------------------|
| AMANDA THOMPSON,                     | : | Case. No. 1:14-CV-1197                       |
| Plaintiff,                           | : |                                              |
| v.                                   | : | OPINION & ORDER                              |
|                                      | : | [Resolving Docs. 102, 108, 109, 110]         |
| CITIZENS NATIONAL BANK, et al.,      | : |                                              |
| Defendants.                          | : |                                              |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On June 3, 2014, Plaintiff Amanda Thompson filed a complaint against Defendants Citizens National Bank ("CNB"), Skidmore "Camm" Garrett, and Philip Bethune.[1] The parties tried the case to a jury in October 2016. On October 13, 2016, the jury gave Plaintiff Thompson a verdict on her contract, good faith and fair dealing, conversion, and civil conspiracy claims,[2] and awarded her compensatory and punitive damages, attorney fees, and costs.[3]

Before the Court are various motions regarding pre and postjudgment interest, punitive damages, and attorney fees. For the following reasons, the Court **DENIES** Defendants' motion to alter or amend the judgment; **GRANTS in part and DENIES in part** Plaintiff's motion for attorney fees; **GRANTS** Plaintiff's motion for postjudgment interest; **DENIES** Plaintiff's motion for prejudgment interest; and **GRANTS** Defendants' motion to stay the judgment provided that Defendants posts a supersedeas bond.

---

[1] Doc. 1.
[2] Doc. 97.
[3] Doc. 97-2.

Case No.14-cv-1197
Gwin, J.

### I. Procedural and Factual Background

In this case, Plaintiff Thompson claims Defendant CNB and Thompson's financial advisor Defendant Garrett conspired to drain her bank accounts without her knowledge to benefit her ex-husband, Bethune. Her ex-husband was best friends with Defendant Garrett. The jury returned a Plaintiff's verdict. The parties now disagree over Plaintiff's entitlement to punitive damages, attorney fees, and judgment interest.

On June 3, 2014, Plaintiff Thompson sued Defendants CNB, Garrett, and Bethune.[4] With her complaint, the Plaintiff alleged breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, conversion, civil conspiracy, and negligence claims.[5]

On August 21, 2015, Judge Lesley Wells granted Bethune's motion to dismiss,[6] but denied Defendants CNB and Garrett's motion to dismiss for lack of personal jurisdiction.[7]

On June 27, 2016, Defendants filed a motion for summary judgment.[8] Plaintiff's contract, good faith and fair dealing, conversion, and conspiracy claims survived summary judgment.[9]

This went to a jury trial October 11-13, 2016. On October 13, 2016, the jury returned a verdict in favor of Plaintiff Thompson on her contract, good faith and fair dealing, conversion, and civil conspiracy claims.[10] The jury awarded $1,133,662.60 on the contract claim; $423,783.90 on the breach of the covenant of good faith and fair dealing claim; $0 for the conversion and civil conspiracy claims; $1,000,000.00 in punitive damages; and attorney fees.[11]

On October 25, 2016, Plaintiff requested a hearing on their motion for attorney fees and

---

[4] Doc. 1. Plaintiff amended her complaint twice. Docs. 8; 12.
[5] Doc. 12.
[6] Docs. 13; 21.
[7] Docs. 14; 22. Judge Wells wrote the opinion. The case was later transferred to this Court.
[8] Doc. 43.
[9] Doc. 69. The contract and good faith and fair dealing claims survived against Defendant CNB only. *Id.*
[10] Doc. 97.
[11] Doc. 97-2.

-2-

Case No.14-cv-1197
Gwin, J.

costs.[12] The next day, Defendants moved to stay enforcement of the judgment pending resolution of post-trial motions and Defendant's forthcoming appeal.[13]

Both parties subsequently filed motions to alter or amend the judgment. Plaintiff requests both pre and post-judgment interest.[14] Defendant argues (1) the Court should dismiss the case for lack of personal jurisdiction over Defendants; (2) punitive damages cannot be sustained where the compensatory damages were only for contract-based claims; and (3) no compensatory damages can be awarded for a breach of the covenant of good faith and fair dealing.[15]

The Court held a hearing on the above motions on December 8, 2016.

## II. Legal Standard

### A. Alter or Amend Judgment

Federal Rule of Civil Procedure 59(e) provides that a party may move a court to alter or amend its judgment within ten days after the entry of the judgment.[16] A district court may grant a Rule 59(e) motion only if there is: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."[17]

---

[12] Doc. 100. Plaintiff's brief in support of attorney's fees and costs. Doc. 111. Declarations in support of Plaintiff's motion for attorney's fees and costs. Docs. 112, 114. Defendants opposed. Doc. 117.
[13] Doc. 102. Brief in support. Doc. 103. Plaintiff opposed. Doc. 104.
[14] Docs. 108,109. Defendants oppose. Docs. 115, 116.
[15] Doc. 110. Plaintiff opposed. Doc. 118. Defendants replied. Doc. 120.
[16] Fed. R. Civ. P. 59(e).
[17] *Intera Corp. v. Henderson,* 428 F.3d 605, 620 (6th Cir. 2005).

Case No.14-cv-1197
Gwin, J.

### B. Pre and Post-judgment Interest

In diversity cases, "while state law governs the award of pre-judgment interest, it is federal law that controls post-judgment interest pursuant to 28 U.S.C. § 1961(a)."[18] Under 28 U.S.C. § 1961, postjudgment interest is mandatory on "any money judgment in a civil case."[19]

Prejudgment interest is generally available under Ohio law.[20] Ohio Revised Code § 1343.03(C) governs prejudgment interest in tort cases.[21] Whether to award prejudgment interest is "addressed to the discretion of the district court . . . ."[22] Ohio Rev. Code § 1343.03(C) provides:

> Interest on a judgment . . . rendered in a civil action based on tortious conduct . . . shall be computed from the date the case of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.[23]

A party has made a good faith effort to settle "if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party."[24] The determination as to the good faith of the parties' settlement efforts "is generally within the sound discretion of the trial court."[25]

---

[18] *Branch Banking & Trust Co. v. Pac. Life Ins. Co.*, 645 F. App'x 387, 392 (6th Cir. 2016) (citing *Broad Street Energy Co. v. Endeavor Ohio, LLC,* 806 F.3d 402, 410 (6th Cir. 2015); *Estate of Riddle v. So. Farm Bur. Life Ins. Co.,* 421 F.3d 400, 409 (6th Cir. 2005)).
[19] 28 U.S.C. § 1961. Interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id*.
[20] *Miller v. Gunckle,* 775 N.E.2d 475, 481 (2002). Ohio law applies to the case. *See* Doc. 69 at 6 n.37.
[21] *Molton v. City of Cleveland*, 839 F.2d 240, 250 (6th Cir. 1988).
[22] *Id*.
[23] Ohio Rev. Code § 1343.03(C).
[24] *Stallworth v. City of Cleveland*, 893 F.2d 830, 835 (6th Cir. 1990).
[25] *Id*.

Case No.14-cv-1197
Gwin, J.

Prejudgment interest is mandatory for contract claims under Ohio Revised Code § 1343.03(A).[26] No finding of good faith settlement efforts is required.[27] Ohio Rev. Code § 1343.03(A) provides:

> [W]hen money becomes due and payable upon a bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest.[28]

"The amount awarded is based on the court's factual determination of an accrual date."[29]

### C. Attorney Fees

"The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."[30] The party seeking attorney fees bears the burden of proving the reasonableness of the hourly rates claimed.[31]

"[E]ither in determining the basic lodestar fee and/or adjustments thereto,"[32] the Court may consider "relevant considerations peculiar to the subject litigation."[33] Among those considerations are the time and labor required by a case, difficulty of the issues, and requisite skill.[34]

"[T]he prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record," serves as

---

[26] *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 693 (6th Cir. 2000).
[27] *Eggert v. Meritain Health, Inc.*, 428 F. App'x 558, 568 (6th Cir. 2011).
[28] Ohio Rev. Code § 1343.03(A).
[29] *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 740 (6th Cir. 2016) (quoting *Norco Equip. Co. v. Simtrex, Inc.*, No. 95914, 2011 WL 3211102, at ¶ 12 (Ohio Ct. App. July 28, 2011)).
[30] *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008).
[31] *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999).
[32] *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).
[33] *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014) (citing *Adcock–Ladd*, 227 F.3d at 349; *Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999)).
[34] *Id.* (citing *Adcock–Ladd*, 227 F.3d at 349 n.8).

Case No.14-cv-1197
Gwin, J.

a guidepost for a reasonable hourly rate.[35] Therefore, "[t]he appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation."[36]

"[D]ocumentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."[37] If "documentation is inadequate, the district court may reduce the award accordingly."[38]

When a reduction in attorney fees is appropriate, a court can apply an "across-the-board" reduction as opposed to line-by-line analysis of attorney billing records.[39]

### D. Costs

Under Federal Rule of Civil Procedure 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."[40] "In reviewing a request for taxation of costs, the court must determine 'first . . . whether the expenses are allowable cost items and then . . . whether the amounts are reasonable and necessary.'"[41] Title 28 U.S.C. § 1920 lists taxable costs.[42]

---

[35] *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).
[36] *B & G Mining, Inc. v. Dir., Office of Workers Comp. Programs*, 522 F.3d 657, 663 (6th Cir. 2008).
[37] *Imwalle*, 515 F.3d at 553 (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495, 502 n.2 (6th Cir. 1984)).
[38] *Imwalle*, 515 F.3d at 553 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).
[39] *See, e.g.*, *Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n,* 590 F. App'x 597, 603 (6th Cir. 2014) (citing *Hensley*, 461 U.S. at 436-37).
[40] Fed. R. Civ. P. 54(d).
[41] *IMRA Am., Inc. v. IPG Photonics Corp.*, No. 06-15139, 2012 WL 6553523, at *1 (E.D. Mich. Dec. 14, 2012) (quoting *Jefferson v. Jefferson County Pub. Sch. Sys.,* 360 F.3d 583, 591 (6th Cir. 2004)).
[42] "(1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920; *see also Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 295 (6th Cir. 2015) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).

Case No.14-cv-1197
Gwin, J.

### III. Discussion

#### A. Defendants' Motion to Alter Judgment

##### 1. The Court properly exercised personal jurisdiction in the case.

Defendants argue that facts proven at trial show that this Court did not have personal jurisdiction over the Defendants. As the Court noted during the December 8, 2016 hearing, however, personal jurisdiction is proper in this case. Defendants previously argued that the Court lacks personal jurisdiction in their motion to dismiss, which Judge Wells denied.[43] The Court agrees with Judge Wells' ruling.

Contrary to Defendants' assertion,[44] facts proven at trial bolster rather than weaken the Court's exercise of personal jurisdiction. The trial record establishes that Defendants provided Plaintiff, an Ohio resident, with financial services.[45] Plaintiff signed the banking agreement in Ohio.[46] Defendants claimed that they spoke with Plaintiff often and sent numerous emails and statements to her Ohio address.[47]

Defendants admit that an amendment to Plaintiff's contract, that used a forged signature,[48] transferred control of her money from a Nevada based trust to the Calfee trust, an Ohio-based trust.[49] Plaintiff's claims came while Defendant operated under this Ohio-based trust.

---

[43] Doc. 22.
[44] Doc. 110-1 at 4-9.
[45] Doc. 105 at 211.
[46] *Id*.
[47] *Id*. at 78, 130-131. Regardless of whether Plaintiff reviewed the statements, Defendants' sending the statements to Ohio is the critical fact.
[48] Doc. 77; Doc. 77-1 at 1-2.
[49] *See* Doc. 77-1 at 1-2. The Court is unpersuaded by Defendants' exercise in semantics. Defendant argues that "the *ownership* of Plaintiff's account was changed from her individual ownership to trustee ownership as part of the Calfee trust." Doc. 110-1 at 7 (emphasis in original). But whether the "ownership" of Plaintiff's money was changed or her funds were moved from the Nevada to the Calfee trust is irrelevant. The critical point is that her money was dispersed, by way of a forged amendment to her account, from an Ohio-based trust instrument that afforded her money less protection.

Case No.14-cv-1197
Gwin, J.

Defendants also admit that funds were transferred out of the Calfee trust into Ohio-based accounts.[50] These contacts, among others, support personal jurisdiction over Defendants in Ohio.[51] Accordingly, Defendants' motion to alter the judgment is **DENIED** on those grounds.

### 2. Plaintiff Thompson is entitled to punitive damages.

Defendants argue that punitive damages cannot be given where the jury only awarded contract-based compensatory damages.[52] Plaintiff responds that she is entitled to punitive damages under two distinct theories.

First, Plaintiff argues that her breach of the covenant of good faith and fair dealing claim sounds in tort rather than contract law—therefore, punitive damages can flow from the compensatory damages awarded for that claim.[53] Alternatively, Plaintiff argues that although punitive damages are not generally recoverable in breach of contract claims, Ohio courts make an exception when the breach is connected with an independent tort and fraudulent conduct.[54] The Court addresses each argument.

*Breach of the Covenant of Good Faith and Fair Dealing*

Because courts generally "[do] not recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing,[55] a good faith and fair dealing claim can only stand if accompanied by a breach of contract claim.[56] In general, a plaintiff may not recover

---

[50] Doc. 110-1 at 8.
[51] Ohio Rev. Code § 2307.382(1).
[52] Doc. 110-1 at 9.
[53] Doc. 118.
[54] *Id.*
[55] *See, e.g.*, *Frisch v. Nationwide Mut. Ins. Co.*, 553 F. App'x 477, 482 (6th Cir. 2014) (citing *Wendy's Int'l, Inc. v. Saverin*, 337 F. App'x 471, 476 (6th Cir. 2009); *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996)).
[56] *Frisch*, 553 F. App'x at 482 (quoting *Littlejohn v. Parrish*, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005); *Lakota*, 671 N.E.2d at 584).

-8-

Case No.14-cv-1197
Gwin, J.

punitive damages for breach of contract under Ohio law.[57] Therefore, a plaintiff usually cannot recover punitive damages for a breach of the covenant of good faith and fair dealing either.[58]

While a good faith and fair dealing claim generally sounds in contract, it is a tort claim under "a few limited exceptions."[59] For example, a duty of good faith arises where the parties have "a special or fiduciary relationship." [60] Breaching a fiduciary-type duty gives a cause of action that can support punitive damages.[61]

Most often, this scenario arises in the insurance context.[62] Some courts find that the bad faith tort claim is available "*only* in the context of an insurance contract."[63] Others, however, say the good faith and fair dealing tort can apply to the banking context.[64]

To determine whether a "special relationship" exists between the parties, "a court must examine the nature of the claim rather than the form of the pleading."[65] Courts find a good faith tort claim "justified" when the plaintiff "has no voice" in preparing the contract and when there is a "great disparity between the economic positions of the parties . . . ."[66] Most important, the fiduciary-type relationship can arise when one party necessarily reposes trust that the other party

---

[57] *Demczyk v. Mutual Life Ins. Co. of N.Y.*, 126 F.3d 823, 828 (6th Cir. 1997).
[58] *Empire-Detroit Steel Div. Cyclops Corp. v. Pennsylvania Elec. Coil, Inc.*, No. CA-2903, 1992 WL 173313, at *3 (Ohio Ct. App. June 29, 1992).
[59] *Empire*, 1992 WL 173313 at *3; *see also Teknol, Inc. v. Buechel*, No. C-3-98-416, 1999 WL 33117391, at *4 (S.D. Ohio Aug. 9, 1999); *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 63 (S.D. Ohio 1986).
[60] *Empire*, 1992 WL 173313 at *3.
[61] *See id*.
[62] *Id*. (citing *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1316 (Ohio 1983)).
[63] *Brandenburger v. Hilti, Inc.*, 556 N.E.2d 212, 219 (Ohio Ct. App. 1989) (citing *Hoskins*, 452 N.E.2d at 1316) (emphasis in original). Some courts in other jurisdictions refuse to extend the bad faith tort outside the insurance context. *Koehler v. First Nat. Bank of Louisville*, 597 N.E.2d 1261, 1264 (Ill. App. Ct. 1992) ("Care must be taken to prevent the transmutation of every breach of contract into an independent tort action through the bootstrapping of the general contract principle of good faith and fair dealing."); *First Nat. Bank & Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 509 (Okla. 1993) (refusing to extend the good faith and fair dealing tort to the banking context).
[64] *See, e.g.*, *Wakeman Oil Co., Inc. v. Citizens Nat'l Bank of Norwalk*, No. H-95-045, 1996 WL 520060, at *4 (Ohio Ct. App. Sept. 13, 1996) (considering whether a "tort of the breach of the duty of good faith" applied where plaintiff accused defendant bank of breaching loan agreements).
[65] *Teknol*, 1999 WL 33117391, at *5 (citing *Salvation Army v. Blue Cross and Blue Shield of Northern Ohio*, 636 N.E.2d 399, 403 (Ohio Ct. App.1993)).
[66] *Empire*, 1992 WL 173313 at *4 (citing *Hoskins*, 452 N.E.2d at 1316).

Case No.14-cv-1197
Gwin, J.

will act in the party's best interest. "[T]he policy for finding a special relationship is not present . . . where the parties to the contract [are] sophisticated."[67]

Although the law is unsettled, the Court finds that the insurance and banking contexts are sufficiently analogous to support a bad faith tort claim in banking relationships. A bank customer is not a "sophisticated" entity. Rather, bank customers trust financial institutions to protect their best interest. This especially applies in a financial advisory setting. The disparity in bargaining power between a customer and her bank mirrors the disparity between an insured and her insurer.

In this case, the Court finds that Plaintiff Thompson's breach of the covenant of good faith and fair dealing claim sounds in tort rather than contract.[68] The parties in this case have vastly different economic experience and bargaining power. Plaintiff is an unsophisticated bank customer, while Defendants are a financial institution and a financial advisor. This disparity suggests a "special relationship."[69] Unsophisticated, Plaintiff Thompson relied upon Garrett and CNB to act in her interest. When such a relationship is violated, a tort claim for the breach of the duty of good faith and fair dealing is viable.[70]

At trial, Defendant CNB's Executive Vice President Michael Bevins testified that CNB owed Plaintiff a "duty of loyalty . . . a duty to act in her best interests . . . [and] an obligation to safeguard [her] money . . . ."[71] Unlike two parties dealing "at arms [sic] length, each protecting

---

[67] *Cincinnati Gas*, 656 F. Supp. at 63.
[68] The Court acknowledges that it previously characterized Plaintiff Thompson's claim as a contract rather than a tort claim in its summary judgment order, Doc. 69 at 11. At that stage in the case, the parties had not yet addressed the distinction. Only recently did Plaintiff suggest that the claim sounds in tort. Doc. 118. Although it is a close question, the Court finds that Plaintiff's claim satisfies the special relationship standard required for a bad faith tort claim.
[69] *Empire*, 1992 WL 173313 at *4 (citing *Hoskins*, 452 N.E.2d at 1316).
[70] *See id.*
[71] Doc. 105 at 53-54.

-10-

Case No.14-cv-1197
Gwin, J.

its own interests,"[72] Plaintiff Thompson trusted Defendants to safeguard her money and protect her interests.

These duties and expectations exemplify the "special relationship" between Plaintiff and Defendants. Defendants breached those duties by conspiring to drain Plaintiff's bank account using fraudulent signatures.[73]

"[P]unitive damages are appropriate when there is a serious abuse of position of privilege or power . . . [e]ven though the underlying relationship is contractual . . . ."[74] The Court finds that scenario present here. Thus, because Plaintiff's breach of the duty of good faith and fair dealing sounds in tort, punitive damages can follow.

Although Plaintiff succeeds on this close question of law, the breach of the covenant of good faith and fair dealing tort claim may be untimely.[75] Thus, the Court addresses Plaintiff's alternative argument for punitive damages.

*Independent Tort Exception*

Although punitive damages are not generally recoverable for a breach of contract in Ohio, they are recoverable if Plaintiff can prove "(1) that [Defendants] breached a contract with her, (2) that [Defendants] committed a connected tort independently of that breach, and (3) that [Defendants'] tortious conduct was fraudulent, malicious, or oppressive in nature."[76]

---

[72] *Wakeman*, 1996 WL 520060, at *4.
[73] Doc. 77-1 at 1-2 (joint stipulations in which Defendants admit Plaintiff's signature was forged on numerous documents that prompted her money to be taken out of her account); Doc. 97-2 (special verdict in Plaintiff's favor on conversion and civil conspiracy claims).
[74] *Lannigan*, 1993 WL 310380, at *5.
[75] Ohio's general statute of limitations for tort claims is four years. Ohio Rev. Code Ann. § 2305.09. Therefore, Plaintiff's claim would not have survived summary judgment. *See* Doc. 69 at 12 n.75; *see also Chic Promotions, Inc. v. Jewelers Mut. Ins. Co.*, No. 1:07CV417, 2009 WL 3126454, at *3 (S.D. Ohio Sept. 24, 2009) (finding that the discovery rule does not apply to bad faith tort claims in the insurance context).
[76] *Mabry–Wright v. Zlotnik,* 844 N.E.2d 858, 863 (Ohio Ct. App. 2005) (citing *Goldfarb v. Robb Report, Inc.,* 655 N.E.2d 211, 215 (Ohio Ct. App. 1995)); *see also Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396, 407 (6th Cir.

-11-

Case No.14-cv-1197
Gwin, J.

The jury's verdict in this case satisfies Plaintiff's burden on the first two prongs: the jury found that (1) Defendant CNB breached its contract with Plaintiff[77] and (2) Defendants committed both conversion and civil conspiracy.[78]

The Court finds that Plaintiff satisfies the third prong because Defendants' conduct was fraudulent in nature. Defendants admitted that Plaintiff's contract was amended by a forged signature,[79] thereby allowing fraudulent withdrawals from her account. Defendants also admitted that three letters to Defendant Garrett requesting withdrawals were fraudulently signed.[80] Defendants admitted—and Plaintiff expected—that Defendants were obligated to act in Plaintiff's "best interests" and "safeguard [her] money."[81] Defendant Garrett's relationship with Plaintiff's ex-husband and the forged signatures suggest that those obligations were not only ignored, but also violated in bad faith. Garrett offers only the implausible claim that he had telephone confirmation of all the disbursements. The jury seemingly disbelieved Garrett and this disbelief finds support in Garrett's transfer of more than $150,000 to Plaintiff Thompson's ex-husband after Plaintiff and her ex-husband had separated.

Some courts hold that punitive damages cannot be sustained if the jury returns a verdict for a plaintiff on the independent tort claim but awards no compensatory damages for the tort.[82] Here, the jury found that Defendants committed conversion and civil conspiracy, but awarded no compensatory damages for those claims.[83]

---

2008) (quoting *McMahon v. Alternative Claims Serv., Inc.,* 521 F.Supp.2d 656, 661 (N.D. Ohio 2007); *Burns v. Prudential Secs., Inc.,* 857 N.E.2d 621, 646 (Ohio Ct. App. 2006)).

[77] Doc. 97-2 at 1.

[78] *Id*. at 5-6; *see also PepsiAmericas*, 268 F. App'x at 407 (finding conversion to be "an independent tort that allows punitive damage recovery upon a showing of malice").

[79] Doc. 77-1 at 1-2

[80] *Id.*

[81] Doc. 105 at 53-54.

[82] *Mabry–Wright,* 844 N.E.2d at 862-63.

[83] Doc. 97-2.

-12-

Case No.14-cv-1197
Gwin, J.

Although it is a close call, the Court finds that the jury's failure to award compensatory damages for the tort claims was meant to avoid double recovery and does not preclude punitive damages. At trial, expert witness Michael Richards calculated the net present value of Plaintiff's account funds to be $1,577,446.50.[84] The jury awarded Plaintiff two separate compensatory damages awards totaling exactly that amount—$1,133,662.60 on the contract claim, and $423,783.90 on the covenant of good faith and fair dealing claim.[85] Any additional jury award, therefore, would have been a double recovery.

It defies logic that the jury believed Defendants converted Plaintiff's money but did her no economic harm. Instead, damages stemming from Plaintiff's conversion and conspiracy claims were likely "cumulative and [already] included in [her other] award."[86] Therefore, to avoid overcompensating Plaintiff, the jury did not award separate damages for the tort claims.

In sum, the jury properly awarded Plaintiff punitive damages. While the Court agrees with the general rule that "punitive damages may not be awarded when a jury fails to award compensatory damages,"[87] that is not the case here. The jury awarded $1,577,446.50 in actual damages and $1,000,000.00 in punitive damages. The Court will not subvert the jury's intent to punish Defendants for their behavior because the jury avoided awarding duplicate compensatory damages.

Accordingly, Defendants' motion to alter the judgment is **DENIED**.

---

[84] Doc. 105 at 149:14-15.
[85] Doc. 97-2.
[86] *Koehler v. PepsiAmericas*, No. 1:04CV742, 2006 WL 2035650, at *5 (S.D. Ohio July 18, 2006), *aff'd sub nom. Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396 (6th Cir. 2008). In *Koehler*, the district court found that Plaintiff was damaged by Defendant's conversion, but did not specifically award damages for that claim because Plaintiff was already fully compensated through her benefits-denial claim. The same analysis was likely applied here.
[87] *Malone v. Courtyard by Marriott L.P.*, N.E.2d 1242, 1248 (Ohio 1996).

Case No.14-cv-1197
Gwin, J.

### 3. Compensatory damages are recoverable in a breach of the covenant of good faith and fair dealing claim.

Defendants also argue that compensatory damages for a breach of the duty of good faith and fair dealing cannot stand because it is part of the breach of contract claim.[88]

As stated above, the Court finds that Plaintiff's breach of the duty of good faith and fair dealing claim sounds in tort rather than contract. However, even assuming it is a contract claim, Defendants provide no case law suggesting that Plaintiff cannot recover damages for the claim.[89] While a good faith and fair dealing claim cannot survive if not connected to a viable breach of contract claim, nothing suggests that separate damages awards for each claim is improper.

Furthermore, Defendants' argument that separate damages lead to double recovery is unfounded. In fact, Plaintiff's total compensatory damages are exactly equal to the net present value of Plaintiff's account.[90] Thus, the jury's award compensated Plaintiff for her losses exactly once, not twice.

Therefore, Defendants' claim that compensatory damages are not recoverable on a breach of the duty of good faith and fair dealing claim is **DENIED.**

### B. Attorney Fees and Costs

Because the Court concludes that Plaintiff is entitled to punitive damages, she is also entitled to attorney fees and costs.[91] Defendant does not dispute the reasonableness of the

---

[88] Doc. 110-1 at 11.
[89] Defendants cite *Ireton v. JTD Realty Invests., L.L.C.*, 944 N.E.2d 1238, 1255 (Clermont Cty. 2010), which stated that "the breach of the duty of good faith does not exist as a separate cause of action from a breach of contract claim." The court did not, however, address whether each claim can support separate damages awards.
[90] Doc. 105 at 149:14-15 ($1,577,446.50 estimate of present net value); Doc. 97-2 (damages totaling that amount).
[91] *Galmish v. Cicchini*, 734 N.E.2d 782, 795 (Ohio 2000).

-14-

Case No.14-cv-1197
Gwin, J.

number of hours Plaintiff's counsel dedicated to the case.[92] The parties' disagreement lies in the reasonableness of Plaintiff's hourly rates.

Plaintiff requests $650 per hour for Attorney Piscitelli, $400 per hour for Attorney Henry, and $125 per hour for paralegal work.[93] Defendants argue that these rates are unreasonable.[94]

The Court finds a reasonable hourly rate by looking to "the rate that lawyers of comparable skill and experience can reasonably expect to command"[95] in the Cleveland area.

According to the Ohio State Bar Association's *The Economics of Law Practice in Ohio in 2013*, the average billing rate for commercial trial lawyers is $285 per hour, while the 95th percentile charges $520 per hour.[96] Solo practitioners with one or more associates charge an average of $269 per hour with a 95th percentile rate of $425 per hour.[97] Associates practicing with a solo practitioner have an average billing rate of $183 per hour and a 95th percentile rate of $330 per hour.[98] The plurality of paralegals with three years' experience[99] bill between $71 and $80 per hour.[100]

According to the National Law Journal's "Billing Rates Across the Country," partners at large Cleveland law firms bill, on average, $604 per hour.[101] Associates bill $370 per hour.[102]

---

[92] Tr. at 37:20-38:5. Attorney Piscitelli spent 144 hours on the case, Attorney Henry spent 789 hours, and Paralegal Rebecca Fenske spent 185 hours. *Id.* at 36:19-37:1.
[93] Doc. 11-1 at 3; Tr. at 43:4-6. Attorney Piscitelli is a solo practitioner. Attorney Henry is his only associate. *See* Tr. at 43:4-6.
[94] Doc. 117 at 3.
[95] *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).
[96] Doc. 111-6 at 40. The OSBA article used billing data from 2012.
[97] *Id.*
[98] *Id.*
[99] Paralegal Fenske has worked as a paralegal since august 2014. Doc. 111-9.
[100] *Id.* at 41.
[101] Doc. 111-4 at 3-5. The National Law Journal article used billing data from 2013. The Court looked to billing rates for Squire Sanders; Benesch, Friedlander, Coplan & Aronoff; and Baker & Hostetler, large national law firms with their largest offices in Cleveland.
[102] *Id.*

-15-

Case No.14-cv-1197
Gwin, J.

Several features of the case suggest that a higher rate is appropriate here.[103] First, Plaintiff's counsel used a contingency fee arrangement. Second, many issues in the case were novel and difficult.[104] Third, the time dedicated to the case—1,118 total hours—may have precluded Plaintiff's counsel from taking other work. Last, the Court finds that counsel was effective at trial.

After considering the prevailing market rates for this locality and the above factors, the Court finds the following billing rates reasonable in the case: $520 per hour for Attorney Piscitelli; $330 per hour for Attorney Henry; and $85 for paralegal hours. Therefore, Plaintiff's attorney fees total $350,975.00.

Because Plaintiff's billing records account for work on some unsuccessful efforts,[105] especially efforts against ex-husband Bethune, and include a few vague or non-billable time entries,[106] the Court applies an across-the-board reduction of 5%. Therefore, the Court **GRANTS** Plaintiff's motion for attorney fees in the amount of $333,426.25.

Defendant does not appear to object to Plaintiff's request for taxable costs, totaling $39,592.79.The request complies with 28 U.S.C. § 1920.[107] Therefore, the Court **GRANTS** Plaintiff's motion for taxable costs in the amount of $39,592.79.

---

[103] *Adcock–Ladd,* 227 F.3d at 349 n.8 (listing factors).
[104] The UCC displacement issue at summary judgment and the punitive damages questions at issue in this order were particularly complex.
[105] Doc. 111-2. For example, Plaintiff's billing records reflect time entries for unsuccessful opposition to former-Defendant Philip Bethune's motion to dismiss. Those fees are not recoverable. *Imwalle*, 515 F.3d at 552 (citing *Hensley*, 461 U.S. at 435).
[106] *Id*. For example, Paralegal Fenske billed for preparing a room and coffee for a deposition. Administrative tasks of this sort are generally non-billable. *See, e.g.*, *Drain v. Astrue*, No. 2:10-CV-0025, 2011 WL 63513, at *3 (S.D. Ohio Jan. 6, 2011). Attorney Piscitelli billed for an "Email." The Court can reduce a fee award for vague entries. *Imwalle*, 515 F.3d at 553.
[107] *See* Doc. 111-3. For example, Plaintiff requests reimbursement for transportation costs and expert witness fees.

-16-

Case No.14-cv-1197
Gwin, J.

### C. Plaintiff's Motions to Alter Judgment

Plaintiff requests both pre and post-judgment interest on her award.[108] The parties agree that Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961[109] at a rate of 0.65%.[110] Interest is calculated from the date of judgment entry,[111] October 14, 2016.[112] Plaintiff is therefore due $3,310.18 in post-judgment interest[113] and additional interest at an annualized rate of 0.65% until paid.[114]

Plaintiff is not, however, entitled to prejudgment interest on her contract or good faith and fair dealing claim.

While prejudgment interest is mandatory for contract claims,[115] awarding said interest would lead to double recovery in this case. Plaintiff's compensatory damages already include prejudgment interest.

At trial, expert witness Michael Richards calculated the net present value of Plaintiff's account funds to be $1,577,446.50.[116] To arrive at that number, he made a compounding interest calculation using a 2.73% interest rate.[117]

---

[108] Docs. 108,109.
[109] 28 U.S.C. § 1961.
[110] *See* Doc. 116; Tr. at 1:6-22. At the December 8, 2016 hearing, Plaintiff agreed to the interest rate proposed in Defendant's response, 0.65%.
[111] *Id*.
[112] Doc. 99.
[113] Daily interest is calculated by multiplying the annualized interest rate by the judgment amount ((0.0065/365) x $2,950,465.50). As of the date of this order, 63 days have passed since judgment was entered. *See Gillette Co. v. Save & Disc. LLC*, No. 1:15-CV-636, 2016 WL 3745764, at *4 (S.D. Ohio July 13, 2016) (explaining postjudgment interest calculation method under 28 U.S.C. § 1961).
[114] *See id.*
[115] *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 693 (6th Cir. 2000); Ohio Rev. Code § 1343.03(A).
[116] Doc. 105 at 149:14-15.
[117] *Id*. at 152.

Case No.14-cv-1197
Gwin, J.

Because the jury awarded Plaintiff compensatory damages in the amount of the net present value[118]—which included interest dating back to the last withdrawal from Plaintiff's account[119]—awarding Plaintiff additional prejudgment interest would be overcompensatory.

Plaintiff's claim for prejudgment interest on the good faith and fair dealing damages, which the Court previously categorized as a tort claim,[120] fails for the same double recovery problem discussed above. Additionally, Plaintiff is only entitled to prejudgment interest on those damages if she made a good faith effort to settle.[121] She fails to make that showing.

The Court finds that neither Plaintiff nor Defendant made a good faith effort to settle. Plaintiff reasonably demanded $500,000 to settle the case during the summary judgment stage.[122] Later, however, Plaintiff increased her demand to $1.1 million.[123] This increase does not show a good faith effort to settle.

While Defendant also failed to make a good faith effort—offering a maximum of $50,000.00 to settle the case[124]—Plaintiff cannot prevail without having first shown her own good faith efforts. Accordingly, Plaintiff's motion for prejudgment interest is **DENIED.**

**D. Stay Judgment**

As the Court noted during the December 8, 2016 hearing, Defendants' motion to stay the judgment pending appeal[125] is granted, provided that Defendants post a supersedeas bond in the amount of the judgment[126] plus 10%, for a total of $3,249,153.29.[127]

---

[118] Doc. 97-2.
[119] Doc. 105 at 152:9-16.
[120] *See supra* at 9.
[121] Ohio Rev. Code § 1343.03(C).
[122] Tr. at 5:1-18; 6:11-16.
[123] *See id.*
[124] *Id.* at 10:22.
[125] Doc. 102.
[126] Damages, attorney fees, costs, and postjudgment interest as of the date of this order total $2,953,775.72.
[127] The additional 10% is meant to cover interest that will accrue during the appeal.

-18-

Case No.14-cv-1197
Gwin, J.

### IV.     Conclusion

For the reasons above, this Court **DENIES** Defendants' motion to alter or amend the judgment; **GRANTS in part and DENIES in part** Plaintiff's motion for attorney fees; **GRANTS** Plaintiff's motion for post-judgment interest**; DENIES** Plaintiff's motion for prejudgment interest; and **GRANTS** Defendants' motion to stay the judgment provided that Defendants post a supersedeas bond in the amount of $3,249,153.29.

IT IS SO ORDERED.

Dated: December 15, 2016              *s/          James S. Gwin*
                                      JAMES S. GWIN
                                      UNITED STATES DISTRICT JUDGE